429 P.2d 17 (1967)
Bert L. SHANNON, Appellant,
v.
CITY OF ANCHORAGE, a municipal corporation, Appellee.
No. 724.
Supreme Court of Alaska.
June 19, 1967.
James K. Tallman, Anchorage, for appellant.
Daniel A. Moore and James K. Singleton, of Delaney, Wiles, Moore & Hayes, Anchorage, for appellee.
Before NESBETT, Chief Justice, and DIMOND and RABINOWITZ, Justices.

OPINION
DIMOND, Justice.
Appellant was a crew member on a vessel which was moored to a barge which in turn was moored to the appellee's dock. Appellant placed an 18-foot ladder from the deck of the barge to the face of the dock, and started to climb up the ladder to take some lines to the dock. When he was about two-thirds of the way up, the ladder slipped and fell and appellant fell and was injured. He brought this action for damages against appellee. The court below granted appellee's motion to dismiss the action for failure to state a claim upon which relief could be granted, and appellant has appealed.
In his complaint appellant alleged that appellee was negligent in failing to provide Jacob's ladders and other equipment for use of the crews and passengers of vessels moored to appellee's dock. In ruling on appellee's motion to dismiss, the court stated that "in the absence of * * * statute, there is no duty on the part of the City to furnish these jacob ladders or any other method of getting from a boat to the dock." The issue raised by both parties in their briefs and in oral argument is whether this view of the superior court was correct.
*18 There is no Alaska statute requiring a dock owner to provide ladders or gangways for use by persons traveling between a vessel and the dock. Nor is there a city ordinance placing such obligation on the owner of a dock. Appellant relies upon Section 15A-41 of the Code of Ordinances of the City of Anchorage.[1] We construe this section of the municipal code as placing the duty of providing gangways on those in charge of vessels, since it is placed with a group of ordinances governing the conduct of those in control of vessels[2] rather than with ordinances imposing duties on wharf owners.[3]
In the absence of a duty owed to appellant, there could be no liability imposed on the city[4] and the dismissal would have to be affirmed. But we believe it is conceivable that such a duty could be established. In an affidavit in opposition to the motion to dismiss, appellant alleged that in the year preceding the accident, during the summer of 1962, appellee furnished Jacob's ladders for all vessels laying at the face of the dock, that appellant was working as chief mate on the vessel, Alaska Roughneck, which landed at appellee's dock from 40 to 50 times, that during all that period of time the appellee furnished ladders for access to and from the vessel on which appellant was working, that appellant noted that ladders were also furnished for other vessels and that there were usually from six to eight Jacob's ladders hanging down the face of the dock at all times during the summer of 1962, and that on the day of the accident, in April 1963, a Jacob's ladder was provided by appellee for another vessel moored to appellee's dock. Furthermore, in his deposition which was on file at the time the motion to dismiss was decided appellant stated, in answer to the question as to how he normally got from his boat to the dock:
They had ladders rigged on the dock, fastened right to the dock that hung down. We used them at all hours of the day or night and at any stage of the tide. We used them even when it was frozen over solid with ice and never had any trouble with them.
The facts asserted by appellant, if true, would mean that appellee had voluntarily undertaken to provide access to its dock from vessels moored to the dock by means of Jacob's ladders hanging down the face of the dock. Such a voluntary act, when once undertaken, may have created a duty in appellee to provide such means of access to its dock so that a failure to do so, as here, might amount to a breach of that duty with resulting liability for damages proximately caused by appellee's failure to act.
Appellee argues that when one undertakes to perform a voluntary act, he is liable only if he performs the act improperly, and that there is no liability if he merely discontinues the act.[5] We disagree, so far as this case is concerned. In view of appellant's assertion that his vessel had landed at appellee's dock 40 or 50 times during the summer of 1962, it is fair to presume that the purpose of the dock was to provide berthing or moorage for vessels such as *19 appellant's, and that persons leaving such vessels would require means of access to the top of appellee's dock. Appellant alleged in his affidavit that the tides in the area where the dock is situated change as much as 38 feet in the summer, that at low tide a 30-foot gangway reaching from the top of the dock to the deck of appellant's vessel would be almost perpendicular and thus useless, that only Jacob's ladders could be used in the situation, and that such ladders have to be rigged from the face of the dock. If this is true, it may mean that as a practical matter the means of reasonable access from a vessel to appellee's dock can be supplied only by the dock owner, for at low tide a rigid gangway would be useless and it would be virtually impossible for the ship personnel, without already being on the dock, to affix a Jacob's ladder from the top of the dock down the dock face to the vessel. Other means of access, such as placing an ordinary ladder from the deck of the vessel to the face of the dock, might be impractical, because of the danger of the ladder not being secure on account of movement of the vessel caused by fluctuating currents and shifting tides.[6]
In these circumstances it is understandable why appellee had customarily provided Jacob's ladders for vessels using its dock, as alleged by appellant in his affidavit and deposition. Because of these circumstances we believe that if the allegations of appellant as to custom and practice are true, appellee may have assumed a duty toward persons on vessels using its dock to provide a reasonably safe means of access to the dock, and that appellee may not relieve itself of that duty by failing to perform it without exposing itself to liability for injuries such as those suffered by appellant. We find that there may be such a continuing duty to act because of the relative positions of the parties  as a matter of practicality and common sense safe means of access to appellee's dock cannot reasonably be furnished by one in appellant's position at all stages of the tide but can readily be furnished by appellee.
In ruling on appellee's motion to dismiss, the court stated that if appellant were to file an amended complaint and allege that by custom or otherwise appellee had assumed the duty of furnishing Jacob's ladders for vessels using appellee's dock, that appellant would then have stated a cause of action. However, the court was of the opinion that appellee's motion was directed against the complaint as then filed and not against what appellant might allege in an amended complaint, and since there was no amended complaint the motion to dismiss would have to be granted because the complaint did not state a claim for relief.
We believe the court below was mistaken. The complaint alleged that appellee was negligent in failing to fulfill its duty of furnishing Jacob's ladders for use of appellant. That was all that was necessary to state a claim for relief.[7] It was unnecessary to state the evidential facts upon which such a duty was founded. Seldom is summary dismissal of a civil action justified for failure to set out evidential facts. If appellee needed more facts, it could call for them under Civil Rule 12 (e)[8] or obtain them by utilization of the *20 rules relating to discovery.[9] It is possible for appellant to prove a claim based on the allegations of his complaint by evidence showing that appellee had voluntarily assumed the duty of furnishing a Jacob's ladder for the use of persons such as appellant. This is all that is necessary to make the complaint good as against a motion to dismiss for failure to state a claim for relief.[10] Dismissal of the action was error.
The judgment is reversed and the case remanded for further proceedings consistent with the views expressed in this opinion.
RABINOWITZ, Justice (concurring).
I concur in the majority's conclusion that the superior court erred in dismissing appellant's complaint.
Civil Rule 12(b) (6) provides that the defense of "failure to state a claim upon which relief can be granted" may be made by motion. The rule further provides that:
If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
The record shows that at the hearing held on appellee's motion to dismiss the trial judge unequivocally indicated that he was excluding matters outside of the pleadings from his consideration of the merits. Subsequently, the judge signed what appears to be a contradictory order prepared by appellee's counsel, which reads in part as follows:
[A]nd the Court having duly considered the pleadings, the Affidavit of the Plaintiff, the Memorandum Briefs and arguments of counsel * * *.
It is well established, under the identical federal rule of civil procedure, that if matters outside of the pleadings are presented to and not excluded by the court, then a rule 12(b) (6) motion to dismiss should be treated as one for summary judgment.[1] There is also federal precedent to the effect that an appellate court is not bound by the trial court's characterization of the manner in which it treated a rule 12(b) (6) motion.[2] Further, there are authorities *21 holding that an appellate court has the power to view the dismissal as being one involving a motion for summary judgment despite the trial court's characterization of its actions as limited solely to determination of a motion to dismiss.[3]
Adopting this last mentioned line of authorities, and treating the matter as a motion for summary judgment, I am of the opinion that it does not appear "beyond doubt" that appellant could prove "no set of facts in support of his claim which would entitle him to relief."[4]
NOTES
[1] Anchorage Code of Ordinances § 15A-41 provides:

Every vessel lying alongside a wharf or alongside a vessel berthed at a wharf shall, from sunset until sunrise, be provided continuously with such appliances in the way of gangways and manropes as may, in the opinion of the port director or in fact, be necessary for the convenience and safety of persons passing to and from such vessels, and every gangway fixed for the purpose of giving the crew or other persons access to the vessel after dark shall be brightly illuminated by the best available means as long as such gangway is in communication with the shore, and a watch shall be conspicuously set upon such gangway.
[2] Id. §§ 15A-21  53.
[3] Id. §§ 15A-57  59.
[4] See Holland v. Mayor, Etc. of the City of New York, 16 Daly 124, 9 N.Y.S. 499 (1890), aff'd 129 N.Y. 674, 30 N.E. 66 (1892).
[5] Pennsylvania R. v. Yingling, 148 Md. 169, 129 A. 36, 39, 41 A.L.R. 398 (1925).
[6] Appellant alleged in his complaint "That due to an unexpected change in tide or movement of the ship caused by other forces, the said ladder rigged by plaintiff slipped and fell while the plaintiff was approximately two-thirds of the way to the top."
[7] See Civil Form No. 13, Complaint for Negligence, which states simply as to defendant's negligence that: "1. On ____, 19__, at [name of place where accident occurred], defendant negligently drove a motor vehicle against plaintiff who was then crossing said street."
[8] Civil Rule 12(e) provides:

If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement before interposing his responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.
United States v. Employing Plasterers Ass'n, 347 U.S. 186, 189, 74 S.Ct. 452, 98 L.Ed. 618, 623 (1954).
[9] See Civil Rules 26-37.
[10] Maier v. City of Ketchikan, 403 P.2d 34, 38 (Alaska 1965); Lieb v. Interior Enterprises, Inc., 395 P.2d 32, 36 (Alaska 1964). In Corsican Productions v. Pitchess, 338 F.2d 441 (9th Cir.1964) at 442 and 443 the court stated:

`[T]he accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' (Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)) `* * * precludes dismissal for insufficiency of the complaint except in the extraordinary case where the pleader makes allegations which show on the face of the complaint some insuperable bar to relief.' Wright, Federal Courts 250 (1963).
[1] Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir.1965); Klebanow v. New York Produce Exch., 344 F.2d 294, 296 n. 1 (2d Cir.1965); Warren v. Lawler, 343 F.2d 351, 356 (9th Cir.1965). See 1A Barron & Holtzoff, Federal Practice § 349, at 310-14 (1960).
[2] In Smith v. United States, 362 F.2d 366, 367-68 (9th Cir.1966), the court stated:

While the district court purported to act on the basis of a Rule 12(b) (6) motion to dismiss, the inclusion of the lease as an exhibit attached to the motion, and the fact that it was not excluded by the court, converted the motion into one for summary judgment under Rule 56 * * *. Warehousemen's Union v. Kuntz, 9 Cir., 334 F.2d 165, 168.
See Thompson v. New York Cent. R.R., 361 F.2d 137, 138-39 (2d Cir.1966).
[3] In Thompson v. New York Cent. R.R., 361 F.2d 137, 144 (2d Cir.1966), the court said:

But Judge Levet did not treat the motion to dismiss as a motion for summary judgment. Does this prevent this Court on appeal from doing what should have been done in the Court below? We think not. Indeed, this very procedure has already been followed in this Circuit in Compania De Remorque Y Salvamento, S.A. v. Esperance, Inc., 1951, 187 F.2d 114, 117, n. 1. See also Larsen v. American Airlines, Inc., 2 Cir., 1963, 313 F.2d 599; Nozet v. District of Columbia, 1962, 112 U.S.App. D.C. 143, 300 F.2d 735; 2 Moore's Federal Practice, page 2256 (2nd ed. 1965).
See International Longshoremen's and Warehousemen's Union v. Kuntz, 334 F.2d 165, 168 (9th Cir.1964).
[4] Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (footnote omitted).

Alternatively, I would hold that the trial judge should have considered the motion as one for summary judgment, particularly in the circumstances where he was made aware, through matters outside of the pleadings, that appellant could file an amended complaint which was not subject to dismissal for failure to state a claim.